United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEHMAN BROTHERS HOLDING, INC.

    Plaintiff,

    v.

IZT MORTGAGE, INC. *dba* Ameritech Mortgage,

    Defendant.
_____/

No. C-09-4060 EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 60)**

Plaintiff Lehman Brothers Holdings, Inc. ("LBHI") has filed suit against Defendant IZT Mortgage, Inc. for, *inter alia*, breach of contract. Both parties consented to proceeding before a magistrate judge. *See* Docket Nos. 4, 20 (consents). Currently pending before the Court is LBHI's motion for default judgment. Having considered the papers submitted, the Court hereby **GRANTS** LBHI's motion.

### I.     FACTUAL & PROCEDURAL BACKGROUND

In its complaint, LBHI alleges as follows. LBHI and a related entity Lehman Brothers Bank, FSB ("LBB") are engaged in the purchase and sale of mortgage loans. *See* Compl. ¶ 6. On February 16, 2006, LBB entered into a written Loan Purchase Agreement with IZT. *See* Compl. ¶ 8. That agreement incorporated the terms and conditions of a certain Seller's Guide. *See id.*; *see also* Docket No. 62 (Pl.'s Supp. Filing, Ex. A) (Loan Purchase Agreement § 2) (providing that "[t]he terms and conditions of the Seller's Guide . . . are hereby incorporated and made a part hereof and are an integral part of this Agreement"; also providing that IZT "agrees to be bound by the terms and

conditions" of the Seller's Guide).  IZT sold a number of mortgage loans to LBB under the Loan Purchase Agreement, including loan ****2129.  *See* Compl. ¶¶ 10, 17.  Subsequently, LBB sold loan ****2129 to LBHI.  *See id.* ¶ 11.  In addition, LBB assigned all of its rights and remedies under the Loan Purchase Agreement to LBHI.  *See id.* ¶ 12; *see also* Baker Decl., Ex. A (Seller's Guide §§ 701, 713.3) (discussing LBB's right to assign).

According to LBHI, IZT breached the Loan Purchase Agreement with respect to the sale of loan ****2129.  More specifically, IZT breached the terms and conditions of the Seller's Guide, which, as noted above, was incorporated by reference into the agreement.  For example, under Section 703 of the Seller's Guide, IZT made the following representations and warranties to LBB:

> 1.   . . . . No document, report or material furnished to [LBB/LBHI] in any Mortgage Loan File or related to any Mortgage Loan (including, without limitation, the Mortgagor's application for the Mortgage Loan executed by the Mortgagor), was falsified or contains any untrue statement of fact . . . .
>
> . . . .
>
> 12.   . . . . The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact . . . . No fraud was committed in connection with the origination of the Mortgage Loan.  [IZT] has reviewed all of the documents constituting the Mortgage Loan File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.
>
> . . . .
>
> 27.   . . . . [IZT] represents that there is no circumstance or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor, or the Mortgagor's credit standing, that can reasonably be expected to cause private institutional investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent, or adversely affect the value or marketability of the Mortgage Loan.

Compl. ¶ 17; *see also* Baker Decl., Ex. A (Seller's Guide § 703(1), (12), (27)).  LBHI alleges that IZT breached the above provisions in Section 703 because the loan application for loan ****2129 stated that the borrower's monthly income was $8,655.00 when it was actually $2,068.33.  *See* Compl. ¶ 17; *see also* Baker Decl., Ex. A (Seller's Guide § 704(1) (providing for an IZT default if IZT breaches any of the representations, warranties, or covenants set forth in the Seller's Guide or the Loan Purchase Agreement).

2

The Loan Purchase Agreement provided that, in the event of a breach, LBB (and therefore, its assignee LBHI) was entitled to demand that IZT repurchase the loans and that IZT indemnify LBB (and therefore, its assignee LBHI) for its losses on the loans. *See* Compl. ¶ 18; *see also* Baker Decl., Ex. A (Seller's Guide § 710) (providing that, in the event of a breach of Section 703 of the Seller's Guide, "[IZT] shall, at [LBB/LBHI's] option, repurchase the related Mortgage Loan . . . at the Repurchase Price"); *id.* (Seller's Guide § 711) (providing for indemnification). Through an agent, LBHI provided IZT with a letter, informing IZT of the breach and demanding indemnification. *See* Compl. ¶ 19. IZT refused to indemnify or otherwise comply with the Loan Purchase Agreement, thus further breaching the agreement. *See id.* ¶ 20.

Based on the above allegations, LBHI brought suit against IZT for (1) breach of contract and (2) breach of express warranty. IZT made an appearance through counsel and answered the complaint. *See* Docket No. 10 (answer). Approximately a year later, IZT's counsel moved to withdraw. *See* Docket No. 41 (motion to withdraw). This Court granted the motion. *See* Docket No. 45 (order). In the same order, the Court gave IZT until December 31, 2010, to obtain new counsel.

Apparently, IZT was unable to find new counsel as, at a status conference held on January 21, 2011, neither IZT nor an attorney appeared before the Court. The Court therefore issued an order, instructing IZT to show cause why its default should not be entered. The Court noted that, because IZT is a corporation, it can only be represented by counsel. *See* Docket No. 52 (order); *see also* Civ. L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."). As before, neither IZT nor counsel appeared at the hearing on the order to show cause. The Court therefore directed the Clerk of the Court to enter IZT's default and instructed LBHI to file a motion for default judgment. *See* Docket No. 57 (civil minutes). LBHI did so. This is the motion currently pending before the Court.

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 55, a default judgment is an available remedy to a plaintiff when the defendant has "failed to plead or otherwise defend" the lawsuit. Fed. R. Civ. P. 55(a). In the instant case, IZT did initially defend the action, filing, for example, an answer as well

3

as several stipulations.[1] However, after IZT's counsel withdrew from the case, IZT was obligated to obtain counsel to represent it, which it did not do. Indeed, IZT never obtained counsel even after the Court issued the order to show cause discussed above. Accordingly, the Court finds that IZT has failed to defend the lawsuit thereby giving LBHI the right to seek a default judgment. *See Parker West Int'l, LLC v. Clean Up Am., Inc.*, No. C-08-2810 EMC, 2009 U.S. Dist. LEXIS 86346, at *5-6 (N.D. Cal. Sept. 1, 2009) (deeming corporation's failure to obtain counsel to represent a failure to defend under Rule 55).

A. *Eitel* Analysis

Under Ninth Circuit law, a corporation's failure to retain counsel can support an entry of a default judgment. *See Employee Painters' Trust v. Ethan Enters.*, 480 F.3d 993, 998 (9th Cir. 2007) (noting that "we have recognized default as a permissible sanction for failure to comply with local rules requiring representation by counsel"); *United States v. High Country Broadcasting Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (stating that it "was perfectly appropriate" for the district court to enter a default judgment against a company when it failed to retain counsel). Ultimately, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will, as a general matter, be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). A court, however, retains the authority to require a plaintiff to "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C) (also giving a court the authority to "investigate any other matter" in order to enter or effectuate judgment).

---

[1] It its answer, IZT did not make any assertion that the complaint was not properly served.

4

In the instant case, the majority of factors listed above weigh in favor of a default judgment. For example, if the motion for default judgment were to be denied, then LBHI would likely be without a remedy. IZT has been given multiple opportunities to participate in this litigation but has failed to do so. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, even though IZT filed an answer to LBHI's complaint, in which it, *inter alia*, asserted various affirmative defenses, the possibility of a dispute concerning material facts is, in all likelihood, small given IZT's failure to defend. Finally, there is no indication that IZT's default was due to excusable neglect.

The only remaining *Eitel* factors that deserve closer analysis are the second and third factors – *i.e.*, the merits of LBHI's substantive claims and the sufficiency of the complaint. These factors basically "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). In the instant case, LBHI has asserted two causes of action: (1) breach of contract and (2) breach of an express warranty. The Court looks to the law of New York in determining what constitutes a breach of contract and an express warranty because both the Loan Purchase Agreement and the Seller's Guide provide that the Agreement shall be construed in accordance with New York state law. *See* Docket No. 62 (Pl.'s Supp. Filing, Ex. A) (Loan Purchase Agreement § 8) (providing that "[t]his Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law"); Baker Decl., Ex. A (Seller's Guide § 713.1) (providing that "[t]he Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties shall be determined in accordance with such law without regard for the principles of conflict of laws").

5

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *see also Harris v. Seward Park Housing Corp.*, 913 N.Y.S.2d 161, 162 (2010) (noting that elements of breach of contract claim under New York law "include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages"). The Court finds that LBHI has sufficiently alleged in its complaint a breach of contract. More specifically, LBHI has pled (1) that IZT entered into the Loan Purchase Agreement with LBB and that LBB subsequently assigned its rights and remedies under the agreement to LBHI; (2) that LBB/LBHI substantially performed their obligations under the agreement; (3) that IZT breached the agreement (Section 703 of the Seller's Guide) because it represented that the application for loan ****2129 did not contain an untrue statement of fact when it in fact did (*i.e.*, the loan application for loan ****2129 stated that the borrower's monthly income was $8,655.00 when it was actually $2,068); (4) that IZT further breached the agreement (Section 710 of the Seller's Guide) because it refused to repurchase the loan and/or indemnify LBB/LBHI; and (5) that LBB/LBHI suffered damages as a result.

As for a claim for breach of an express warranty, "a plaintiff must make a showing of the following four elements . . . : '(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant.'" *LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 U.S. Dist. LEXIS 59303, at *23 (S.D.N.Y. Aug. 13, 2007). Here, too, LBHI has adequately pled a claim for relief. More specifically, it has alleged in the complaint (1) that IZT entered into the Loan Purchase Agreement with LBB and that LBB subsequently assigned its rights and remedies under the agreement to LBHI; (2) that the agreement contained an express warranty that the application for loan ****2129 did not contain an untrue statement of fact (Section 703 of the Seller's Guide); (3) that the warranty was part of the basis of the bargain between IZT and LBB,[2] and (4) that the

---

[2] *See also* Seller's Guide § 701 (providing that "[IZT] acknowledges that Mortgage Loans are purchased in reliance upon: (i) the truth and accuracy of [IZT's] representations and warranties in the Loan Purchase Agreement and this Seller's Guide . . . .").

1 warranty was breached because the application for loan ****2129 did contain an untrue statement of
2 fact, *i.e.*, what the borrower's monthly income was.

3 Because LBHI has adequately pled both a claim for breach of contract and a claim for breach
4 of an express warranty, the second and third *Eitel* factors also weigh in favor of default judgment.

5 Taking into account the *Eitel* factors discussed above as well as IZT's failure to obtain
6 counsel, the Court concludes that a default judgment in favor of LBHI is appropriate.

B. <u>Damages</u>

Because the Court concludes that default judgment is warranted, it must determine what damages are appropriate. LBHI has the burden of "proving up" its damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

As discussed above, IZT breached the Loan Purchase Agreement – more specifically, Section 703 of the Seller's Guide – when it represented that the loan application for loan ****2129 did not contain an untrue statement of fact when it actually did (*i.e.*, what the borrower's monthly income was). Under the Seller's Guide, in the event of a breach of Section 703, "[IZT] shall, at [LBB/LBHI's] option, repurchase the related Mortgage Loan . . . at the Repurchase Price." Baker Decl., Ex. A (Seller's Guide § 710). Consistent with the Seller's Guide, the damages requested by LBHI are the Repurchase Price.

The term "Repurchase Price" is defined in the Seller's Guide as follows:

> An amount equal to (i) the greater of the Purchase Price or par multiplied by the outstanding principal balance of the Mortgage Loan as of the Purchase Date; less (ii) the aggregate amount received by [LBB/LBHI] of reductions and curtailments of the principal balance of the Mortgage Note; plus (iii) any and all interest payable on the outstanding principal balance of the Mortgage Note as of the date of repurchase; plus (iv) any and all expenses, including, without limitation, costs of foreclosure and reasonable attorney's fees, incurred by [LBB/LBHI] in the exercise by [LBB/LBHI] of its rights and remedies in connection with the Mortgage Loan, the Mortgaged Property, and/or the Mortgagor, as more specifically defined in this Seller's Guide.

Baker Decl., Ex. B (Seller's Guide § 8) (defining "Repurchase Price"). LBHI has provided a declaration from John Baker, an employee of one of its subsidiaries, which calculates the

7

Repurchase Price as defined above based on the business of records of LBB, LBHI, and one of their agents. The Court has reviewed the Baker declaration and finds that it substantiates LBHI's claim that the Repurchase Price is $289,791.85. *See* Baker Decl. ¶ 18. The Court notes that the Repurchase Price takes into account the fact that LHBI obtained some money from the liquidation of loan ****2129, *i.e.*, when the property securing the loan was sold through the REO process. *See id.* ¶ 13 & Ex. D (reflecting sale proceeds of $165,536.91).

In addition to the Repurchase Price, LBHI seeks as part of its damages prejudgment interest. As noted above, the Seller's Guide provides that New York law is applicable. Under New York law, prejudgment interest is a part of damages in a breach of contract case. *See* N.Y.C.P.L.R. § 5001(a) (providing for interest to verdict, report, or decision in breach of contract case); *id.* § 5002 (providing for interest from verdict, report, or decision to judgment). The statutory rate is nine percent per year. *See id.* § 5004 (providing that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute"). Interest is

> computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

*Id.* § 5001(b).

In its papers, LBHI asserts that the earliest ascertainable date that its claims existed was the day that loan ****2129 was liquidated – *i.e.*, the day that the property securing the loan was sold. That day appears to be September 24, 2008. *See* Baker Decl., Ex. F (column 14); *see also id.*, Ex. E (letter) (stating that the "loan liquidated on September 10, 2008 through the REO process"). Arguably, the date that the claims existed was earlier, but LBHI has made no argument to that effect. It seems fair to say that, at the very least, the claims existed on the day that the property was sold. Presumably, the property would not have been sold but for the borrower's inability to pay the mortgage with her income.

Interest is calculated on the Repurchase Price of $289,791.85 (as that sum takes into account the sale of the property on September 10, 2008). Nine percent of $289,791.85 is approximately

8

$26,081.27. Thus, interest expressed at a daily rate is $71.46 (*i.e.*, $26,081.27 ÷ 365 days). There are 988 days between September 24, 2008, and the date of final judgment (June 9, 2011). Thus prejudgment interest is $70,602.48.

### III. CONCLUSION

For the foregoing reasons, the Court grants LBHI's motion for default judgment and awards LBHI damages in the amount of $360,394.33 which represents the Repurchase Price of $289,791.85 and $70,602.48 in prejudgment interest.

This order disposes of Docket No. 60. The Clerk of the Court is directed to enter judgment in accordance with this opinion and close the file in this case.

IT IS SO ORDERED.

Dated: June 9, 2011

_____
EDWARD M. CHEN
United States District Judge